**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 13 2002**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

ANN PALMER,

　　　　Plaintiff - Appellant,

v.

DEPARTMENT OF HEALTH AND
HUMAN SERVICES; JO ANNE B.
BARNHART, * Commissioner of
Social Security Administration,

　　　　Defendants - Appellees.

No.  02-2002
D.C. No. CIV-00-1698-BB/LCS
(D. New Mexico)

---

**ORDER AND JUDGMENT** **

---

Before **O'BRIEN** and **PORFILIO** , Circuit Judges, and **KANE**,*** Senior District
Judge.

---

\*　　　On November 9, 2001, Jo Anne B. Barnhart became the Commissioner of
Social Security.  In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Ms. Barnhart is substituted as the appellee in this action.

\*\*　　　This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

\*\*\*　　　The Honorable John L. Kane, Senior District Judge, United States District
Court for the District of Colorado, sitting by designation.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff-appellant Ann Palmer appeals from the district court's order affirming the Commissioner's denial of her application for disability and supplemental security income benefits under the Social Security Act. We exercise jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. We affirm.

I.

In May 1997, plaintiff applied for social security benefits, alleging that she has been disabled since October 1995. After plaintiff's application was denied initially and on reconsideration, a de novo hearing was held before an administrative law judge (ALJ). In a decision dated March 26, 1999, the ALJ denied plaintiff's application at step five of the evaluation process, concluding that, while she suffers from severe mental and physical impairments and is unable to perform her past relevant work, there are other jobs available in the national economy which she can perform. Specifically, the ALJ found that plaintiff retains the physical capacity to perform light work and the mental capacity to perform semi-skilled work, and that she is therefore capable of working as a customer service clerk, file clerk, duplicating machine operator, or receptionist.

-2-

In October 2000, the Appeals Council of the Social Security Administration denied plaintiff's request for review of the ALJ's decision. Plaintiff then filed a complaint and a motion to reverse or remand the administrative agency decision in the United States District Court for the District of New Mexico. After independently reviewing the entire record, a magistrate judge recommended to the district court that plaintiff's motion to reverse or remand be denied. In October 2001, the district court entered an order overruling plaintiff's objections to the magistrate judge's recommendation, and the court adopted the magistrate judge's recommendation and denied plaintiff's motion to reverse or remand the administrative agency decision. This appeal then followed.

## II.

"To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (citation omitted). The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. *Id.* Here, the ALJ denied benefits at step five. At step five, a claimant has established that he has a severe impairment which prevents him from returning to his past relevant work, and "the burden shifts to the [Commissioner] to show that the claimant

-3-

retains the residual functional capacity (RFC) to do other work that exists in the national economy." *Id.* at 1487.

In this case, the ALJ found that the Commissioner met his burden at step five, and the Appeals Council denied plaintiff's request for review, rendering the decision of the ALJ the final decision of the Commissioner. *See Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991). We review the Commissioner's decision to determine only whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards. *Id.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). In reviewing the record, we neither reweigh the evidence nor substitute our judgment for that of the Commissioner. *Hargis*, 945 F.2d at 1486. However, the record to be considered on review includes all of the evidence before the Appeals Council, including any new evidence that was not before the ALJ. *O'Dell*, 44 F.3d at 859.

III.

Plaintiff contends the ALJ committed two errors that require us to reverse the district court's affirmance of the ALJ's denial of benefits. First, plaintiff claims the ALJ ignored the testimony of the vocational expert (VE), in response

to three separate hypothetical questions, that there are no jobs in the economy which plaintiff is capable of performing. [1] Second, plaintiff claims the ALJ failed to give controlling weight to the opinions of her treating physicians.

1. Testimony of the VE

At the hearing before the ALJ, the ALJ asked the VE the following hypothetical question:

> What impact on the–either the availability of [customer service clerk, file clerk, duplicating machine operator, or receptionist] jobs or the transferability of those skills would a limitation of seriously limited, but not precluded in terms of ability to relate to co-workers, deal with the public or interact with supervisors have?

Aplt. App., Vol. I, at 71. The VE responded that "[s]eriously limited in those jobs, she would–there aren't any of those jobs that she could perform because they're all dealing with the public, supervisors and co-workers." *Id.* The ALJ then asked the VE another hypothetical question:

> What impact do you have if you take those factors I've just outlined, seriously limited, but not precluded in terms of ability to deal with co-workers, relate to public, interact with supervisors. Throw into

---

[1]  In her opening brief, plaintiff also claims the ALJ committed reversible error because her hypothetical questions to the VE failed to include certain physical limitations which had been identified by her treating physicians. However, in the objections she filed to the magistrate judge's proposed findings and recommended disposition, *see* Aplt. App., Vol. II, at 80-83, plaintiff failed to object to the magistrate judge's proposed findings and recommended disposition on this ground, and she therefore waived the VE/physical limitations issue for purposes of this appeal. *See Key Energy Res. Inc. v. Merrill (In re Key Energy Res. Inc.)* , 230 F.3d 1197, 1199-1200 (10th Cir. 2000).

the mix the seriously limited but not precluded in terms of ability to behave in an emotionally stable manner, relate predictably in social situations and deal with work stresses?  What impact does that have on the availability of jobs?

*Id.* at 72.  The VE responded by stating that these limitations "would eliminate all the jobs."  *Id.*

In addition, plaintiff's counsel asked the VE the following hypothetical question:

I want you to assume then the testimony of the claimant and her daughter about emotional problems that she's presented both at home and work, in a work setting, and assume that she would have problems in completing a normal work day, accepting instructions and responding appropriately to criticism, getting long [sic] with co-workers and peers without distracting them or exhibiting behavioral extremes and responding appropriately to changes in the work setting.  Making those assumptions, would the claimant be able to do any of her past relevant work or any of the suggested jobs you've come up with?

*Id.* at 73.  The VE's response to this question was "[n]o."    *Id.*

It is well established that an ALJ "may not ask a vocational expert a hypothetical question based on substantial evidence and then ignore unfavorable answers."  *Campbell v. Bowen*, 822 F.2d 1518, 1523 n.6 (10th Cir. 1987).  Plaintiff claims the ALJ violated this rule because, in his decision denying benefits, he found that plaintiff has severe mental impairments, consisting of an adjustment disorder, a borderline personality disorder, and depression, but he then failed to discuss the VE's unfavorable answers to the hypothetical questions.  As

-6-

a result, according to plaintiff, the ALJ erroneously concluded that her mental impairments would not prevent her from performing the four semi-skilled jobs identified by the VE as involving skills that were transferable from her prior work experience.

After thoroughly analyzing plaintiff's medical records, the opinions of her treating physicians, the opinions of the consulting physicians retained by the Commissioner, and the other evidence in the administrative record, the magistrate judge concluded as follows:

> In this case, the ALJ found the Plaintiff's testimony and other evidence did not credibly establish symptoms of functional limitations to the extent alleged. His hypothetical question assumed that Plaintiff was seriously limited in the ability to relate to co-workers, deal with the public, and interact with supervisors. . . . Although the VE furnished an unfavorable answer, the ALJ's question was not supported by the record. Therefore, even though the ALJ included within his questions pertaining to an individual with seriously limiting emotional problems at the hearing, he was not required to rely upon the VE's answer if he later discredited the Plaintiff's alleged limitations. I cannot say the [ALJ's] decision is unsupported by substantial evidence.

Aplt. App., Vol. II, at 76 (citations omitted).

Plaintiff argues that the magistrate judge's analysis is flawed because the limitations set forth in the hypothetical questions were supported by: (1) the medical records and mental impairment evaluations of her treating psychologist, Dr. Harmon, *id.*, Vol. I, at 197-201, 252-53, 284-85; (2) the mental impairment evaluation completed by her treating physician, Dr. Carabajal, *id.* at 254-55; and

-7-

(3) "[t]he evidence of psychiatric problems with past employers, and the loss of two jobs due to emotional instability," Opening Br. at 15.

We are not convinced the ALJ erred in determining that the limitations set forth in the hypothetical questions were not supported by the record. First, Dr. Harmon determined in June 1996, November 1996, and February 1997 that plaintiff was unable to work due to her mental impairments. *See* Aplt. App., Vol. I, at 198-201. The ALJ correctly noted, however, that Dr. Harmon "provided no formal or detailed mental status evaluation [to support his opinion]," *id.* at 24, and that "his basis for reaching this conclusion is not clear from the evidence in the record," *id.* Further, in the subsequent mental impairment evaluations he prepared in February 1998 and November 1998, [2] Dr. Harmon listed a number of limitations that plaintiff would have to overcome if she returned to work, and he rated her mental limitations as moderate/severe. *Id.* at 252-53, 284-85. Nonetheless, he concluded that the limitations did not preclude employment. *Id.*

Second, we agree with the magistrate judge that the ALJ properly discounted the opinions set forth in Dr. Carabajal's mental impairment evaluation. *Id.* at 254-55. Dr. Carabajal is a board-certified family practitioner, *id.* at 257,

---

[2] After the ALJ issued his decision, Dr. Harmon prepared another mental impairment evaluation in May 1999 which was submitted to the Appeals Council. *See* Aplt. App., Vol. I, at 8, 307-08. However, while plaintiff cites to the May 1999 evaluation in her reply brief, she has not raised any specific issues regarding that evaluation.

and there is no evidence in the record indicating that Dr. Carabajal treated plaintiff for her mental impairments. Instead, the record indicates that she treated plaintiff for her back and stomach problems. *Id.* at 245-51, 259-66, 271-74. As a result, even if plaintiff is correct that Dr. Carabajal is permitted under state law to provide psychiatric services, *see, e.g., Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987), we cannot say the ALJ acted improperly in giving greater weight to the opinions and conclusions of Dr. Harmon and Dr. Hughson, the consulting psychiatrist retained by the Commissioner, "both of whom are mental health professionals and both of whom essentially found [plaintiff] capable of working." Aplt. App., Vol. I, at 26.

Third, plaintiff's prior work history does not establish that she is incapable of working as a result of her mental impairments and her related anger-management problem. According to plaintiff's own testimony, she was fired from her most recent job after an emotional confrontation with her boss, but she acknowledged that the confrontation was precipitated by her boss's abusive behavior and was also related to stress she was experiencing at the time caused by medical problems and problems with her teenage daughter. *Id.* at 45-47. And, while plaintiff testified that she had problems interacting with her co-workers at another prior job, she does not know why she was fired from that job. *Id.* at

47-48, 51-52. Thus, we cannot conclude, based on plaintiff's prior work history, that she is permanently disabled due to her mental impairments.

Finally, the record shows that, since the time of her last employment, plaintiff has been receiving reasonably effective treatment for her depression and related anger-management problem, and that there has been a gradual, but marked, improvement in her mental condition. As a result, while we do not question whether plaintiff actually suffers from depression and a related anger-management problem, we fully concur with the following conclusions of the ALJ:

> It is clear from this record that much of [plaintiff's] symptomatology consists of anger and explosive outbursts associated with an inability to control her emotions. While it is true that anger can interfere significantly with work, at the same time this is ultimately a problem of attitude and emotion. There is nothing in the record which would suggest that [plaintiff's] condition is not responsive to control through counseling, medication, and self-discipline, or that it has ever resulted in a degree of limitation as to be considered disabling under the Social Security Act. The record generally shows that [plaintiff's] mental impairments are responsive to medication, counseling, and changes in [her] life circumstances. The record likewise describes her treatment regimen as effective and helpful. Any finding of disability on the basis of [plaintiff's] alleged mental impairments would fly in the face of the record as a whole and the Social Security Act and Regulations.

*Id.* at 26-27.

2.  Opinions of Plaintiff's Treating Physicians

Plaintiff contends the ALJ erred by failing to give controlling weight to the opinions of her treating physicians, Dr. Harmon, Dr. Carabajal, and Dr. Dorin.[3] With respect to Dr. Harmon and Dr. Carabajal and their opinions regarding the work limitations resulting from plaintiff's mental impairments, we explained above why their opinions are not supported by substantial evidence in the record, and we will not repeat that discussion here.  Instead, we need only determine whether the ALJ erred in failing to give controlling weight to the opinions of plaintiff's treating physicians concerning her alleged physical impairments and related limitations.

A treating physician's opinion is not dispositive on the ultimate issue of disability.  *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).  Nonetheless, an ALJ must comply with specific requirements before rejecting the opinions of a claimant's treating physicians, and we have explained the process as follows:

> An ALJ is required to give controlling weight to a treating
> physician's well-supported opinion, so long as it is not inconsistent

---

[3]    Plaintiff also claims the ALJ erred in failing to give controlling weight to the opinions of Dr. Olivares, another of her treating physicians.  However, we need not address this claim since there is no indication in the record that Dr. Olivares provided any specific opinions, or diagnoses, concerning plaintiff's alleged mental or physical impairments.  *See* Aplt. App., Vol. I, at 267-70, 275-77.

with other substantial evidence in the record. When an ALJ decides to disregard a medical report by a claimant's physician, he must set forth specific, legitimate reasons for his decision. Further, there are several specific factors the ALJ must consider, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (citations and quotations omitted).

The record indicates that plaintiff was involved in a car accident in November 1997, and she subsequently complained of back and neck pain. Following the accident, she was treated by a chiropractor, Dr. Simons, and by Dr. Carabajal, and she was eventually diagnosed by Dr. Wilson, an orthopedic specialist, as suffering from degenerative disc disease, with a superimposed cervical strain, along with mechanical low back pain, with a superimposed strain. *See* Aplt. App., Vol. I, at 260. Radiology reports also indicated that she had a small focal disc bulge in her lumbar spine without evidence of herniation and a possible cervical spondylosis. *Id.* at 247, 262.

The ALJ found that, while plaintiff's back and neck problems constitute severe physical impairments, she still retains the capacity to perform light work.

-12-

*Id.* at 29-31. The governing regulations define light work as involving lifting no more than twenty pounds at a time, with frequent lifting or carrying of objects weighing up to ten pounds, and a good deal of walking or standing, or sitting with some pushing and pulling of arm or leg controls. *See* 20 C.F.R. §§ 404.1567 and 416.967. Plaintiff contends the ALJ's finding that she can perform light work is erroneous, and that the ALJ committed reversible error by discounting the opinions of Dr. Carabajal and Dr. Dorin regarding her physical limitations.

In July 1998, Dr. Carabajal completed a physical impairment evaluation concerning plaintiff's back and neck problems. *See* Aplt. App., Vol. I, at 256. She concluded that: (1) plaintiff could occasionally lift and/or carry twenty pounds; (2) plaintiff could frequently lift and/or carry less than ten pounds; (3) plaintiff could stand and/or walk for at least two hours in an eight-hour work day; (4) plaintiff could sit for less than six hours in an eight-hour work day; and (5) plaintiff has a limited ability to push and/or pull with her lower extremities due to weak lower muscles. *Id*.

In April 1999, after the ALJ issued his decision, Dr. Dorin also prepared a physical impairment evaluation for plaintiff. *Id.* at 306. Dr. Dorin's evaluation was submitted to the Appeals Council, *id.* at 8, and she concluded that: (1) plaintiff could frequently lift and/or carry less than ten pounds; (2) plaintiff could stand and/or walk less than two hours in an eight-hour work day;

-13-

(3) plaintiff must periodically alternate between sitting and standing to relieve pain or discomfort; and (4) plaintiff has a limited ability to push and/or pull with her upper and lower extremities. *Id.* at 306.

Although the limitations set forth in Dr. Carabajal's and Dr. Dorin's evaluations are arguably inconsistent with an ability to perform light work, we agree with the ALJ that the conclusions set forth in Dr. Carabajal's evaluation are not supported by her clinical notes or the record as a whole, and we hold that Dr. Dorin's evaluation is similarly unsupported by the record. [4] Specifically, as summarized by the ALJ:

> When Dr. Carabajal examined [plaintiff] on December 29, 1997, she reported no tenderness or spasm in [plaintiff's] back and she said medication had improved both her back and rib pain. On March 5, 1998 [plaintiff] told Dr. Carabajal that her back was doing much better, and examination of the spine again showed no abnormalities. Radiographic evidence showed some degenerative changes in the cervical area, but no significant abnormalities elsewhere in the spine.
>
> . . . .
>
> [T]he record shows no evidence of a major back problem. . . . Physical examinations of the back have been within essentially normal limits. [Plaintiff] responded well to physical therapy and chiropractic treatments. As noted, she told Dr. Simon in February 1998 that therapy had really helped her back, and she reported to Dr. Carabajal in March 1998 that her back was doing much better.

---

[4] We also note that, while plaintiff claims Dr. Dorin continued to treat her after she underwent a hysterectomy in 1996 under Dr. Dorin's care, there are no medical records in the record pertaining to any treatment provided by Dr. Dorin after 1996.

-14-

On February 23, 1998, she cancelled an appointment with Dr. Simon because she was in the middle of painting. At the time of her last physical examination in August 1998, she offered no complaints of back pain and Dr. Olivares reported a normal neurological examination. I find that the medical evidence supports a capability to perform at least light-level work activity.

. . . .

This finding . . . is consistent with the medical record, which documents no major physical impairments or limitations, with [plaintiff's] somewhat sporadic and relatively minimal treatment regimen, and with her actual level of activities.

Aplt. App., Vol. I, at 25, 29 (citations omitted).

The ALJ's conclusions are supported by substantial evidence in the record, and there is no overwhelming evidence to the contrary. Accordingly, we are bound by the ALJ's conclusions. *See Hargis*, 945 F.2d at 1486.

The judgment of the district court is AFFIRMED.

Entered for the Court

John C. Porfilio
Circuit Judge

-15-